UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TAMIR AYALA-ROSARIO,

                                Plaintiff,

        -v-

WESTCHESTER COUNTY, *et al.*,

                                Defendants.

Case No. 19-CV-3052 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Tamir Ayala-Rosario.
Valhalla, NY
*Pro se Plaintiff*

Loren Zeitler, Esq.
Westchester County Department of Law
White Plains, NY
*Counsel for Defendants Westchester County, Graham, Spano, Diaz, Hardy, Roberts, Delgrosso, Beckford, Kitt, Carden, Sorrentino, Omess, Pena, Vollmer, Price, Meade, Munioz, and Torres*

Paul Andrew Sanders, Esq.
Barclay Damon LLP
Rochester, NY
*Counsel for Defendants Correct Care Solutions, Ulloa, and Gendell*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Tamir Ayala Rosario ("Plaintiff"), an inmate in Westchester County Jail

("WCJ"), brings this Action pursuant to 42 U.S.C. § 1983 against Defendants Westchester

County, Sergeants Rochelle Beckford ("Beckford"), Dawn Price ("Price"), Kitt ("Kitt"), Meade

("Meade"), Munioz ("Munioz"), Sorrentino ("Sorrentino"), and Torres ("Torres"), Captains

Carden ("Carden"), Omess ("Omess"), Roberts ("Roberts"), and Hardy ("Hardy"), Correction

Officers Graham ("Graham") and Pena ("Pena"), Warden Vollmer ("Vollmer"), Assistant

Warden Francis Delgrosso ("Delgrosso"), Commissioner Joseph K. Spano ("Spano"), Deputy

Commissioner Leandro Diaz ("Diaz"), Correct Care Solutions, LLC ("CCS"), and Alexis

Gendell ("Gendell") and Raul Ulloa ("Ulloa"), both doctors employed by CCS (collectively,

"Defendants").[1]

Before the Court are two Motions To Dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) (jointly, "the Motions"), one filed by the CCS Defendants, (the "CCS

Motion"), and the other by the County Defendants, (the "County Motion").  (CCS Defs.' Not. of

Mot. (Dkt. No. 36); Cty. Not. of Mot. (Dkt. No. 40).)  For the reasons that follow, the CCS

Motion is granted in full, and the County Motion is granted in part and denied in part.

<u>I.  Background</u>

<u>A.  Factual Background</u>

The following allegations are drawn from Plaintiff's Complaint, (Compl. (Dkt. No. 2)),

and assumed true for the purposes of these Motions.

On or about December 10, 2018, Plaintiff was "housed at [WCJ's] 4SW housing unit"

and participating in a "program in [an] effort to address [his] violent rages."  (Compl. 6.)[2]

Plaintiff had been taking psychiatric medications for the previous five years," and had in the past

"been admitted to numerous psychiatric centers due to [his] violent, impulsive actions" related to

"anxiety, depression, and post-traumatic stress [disorder]."  (*Id.*)

---

[1] Defendants Beckford, Price, Kitt, Meade, Munioz, Sorrentino, Torres, Carden, Omess, Roberts, Hardy, Graham, Pena, Vollmer, Delgrosso, Spano, and Diaz are collectively identified as "Individual County Defendants."  Together, Individual County Defendants and Westchester County are jointly identified as the "County Defendants."  CCS, Gendell, and Ulloa are collectively identified as the "CCS Defendants."

[2] All citations to the Complaint reflect the page number included in the ECF stamp. Quotations from the Complaint also reflect corrections to minor errors in grammar, spelling, and capitalization.

On the date of incident, Plaintiff was called to a "sally-port" between the 4SW and the 4NW housing units to receive his medication from nurses through a small opening.  (*Id.*)  While inside the sally-port, Plaintiff "got into an argument" with Graham, who was then stationed outside the sally-port.  (*Id.*)  The argument lasted for about five minutes, during which Plaintiff became "angry" and "began to scream curses at Graham."  (*Id.*)  Graham "could not handle" Plaintiff's cursing, and he too became "very angry."  (*Id.*)  Pena, who was also present, tried to diffuse the situation by "telling [Plaintiff] to just walk away."  (*Id.*)  However, Graham "put[] on his leather gloves," and instructed the responsible "booth officer" to open the sally-port door so that he could approach Plaintiff.  (*Id.*)  Seeing the "evil look on Graham's face" as Graham entered, Plaintiff attempted to walk away and return to his housing unit.  (*Id.*)  Before Plaintiff could escape, however, Graham "grabbed [Plaintiff] from behind and wrestled [him] to the ground.  (*Id.* at 6–7.)  Graham "grabbed [Plaintiff's] left arm while yelling '[y]ea, yea, I told you so, [y]ea!'"  (*Id.* at 7.)  Graham, then "used a martial arts technique" to break Plaintiff's arm, forcing Plaintiff's elbow to where his "fore[arm] should be" and "causing "severe pain."  (*Id.*)  At the same time, Pena grabbed Plaintiff's right arm.  (*Id.*)  Plaintiff alleges that Graham's and Pena's actions violated Westchester County Department of Corrections ("WCDOC") policy, because they entered the sally-port while Plaintiff was "secured" and "not a threat to the officers, himself, or any[o]ne else," and because they failed to call a supervisor.  (*Id.*)

An emergency response team arrived and transported Plaintiff to a WCDOC clinic.  (*Id.*)  There, a nurse "openly told" Plaintiff that his arm wasn't broken.  (*Id.*)  However, when Plaintiff was taken to Westchester Medical Center's emergency room "sometime later," Plaintiff learned he had "a displaced fracture of [his] [l]eft arm."  (*Id.*)  "Medical officials of Westchester Medical center attempted to place Plaintiff in a fiberglass cast, but the transporting officers told the

[medical officials] that Plaintiff could not be placed in a cast due to jail restrictions and that they should use an alternative remedy." (*Id.*) However, a nurse "objected to this restriction and substituted the cast for a splint." (*Id.*) The transportation officers then "openly stated" that Hardy, Roberts, Delgrosso, Carden, Omess, Vollmer, Ulloa, Gendell, Munioz, and Torres had "conferred and decided that Plaintiff could not be placed into a fiber glass cast due to his violent history." (*Id.*) Plaintiff avers that "as a result of the cast restriction," he "suffered in excruciating pain every time he moved his [left] arm and whenever sleeping [or] changing clothing," and "could not properly shower, or clean his living quarters." (*Id.* at 8.)

Plaintiff further alleges that his hospital discharge records, which were "provided to all [D]efendants," stated that he "must be housed in an infirmary setting with an elevated bed." (*Id.*) Nevertheless, "Sorrentino, Price, Kitt, Beckford, Munioz, Torres, Delgrosso, Hardy, and Diaz collectively informed Plaintiff" that he could not be housed in the infirmary because of his confrontation with Graham. (*Id.*) Thereafter, Plaintiff "informed" Beckford, Price, Kitt, Sorrentino, and Hardy that he wished to file a grievance, but required assistance with writing the grievance due to his injuries. (*Id.*) These Defendants responded, "you can't grieve disciplinary" and refused assist him in drafting a grievance. (*Id.*)

Although Gendell and Ulloa had "full knowledge" that Plaintiff required further care and a cast, they "turned a blind eye and failed to act," neglecting to prescribe or offer "proper pain relief for [Plaintiff's] broken arm." (*Id.* at 8–9.) Meade was also "made aware" that Plaintiff required s transfer to the infirmary wing; however, Meade too "refused to transfer him to a housing unit compatible with his injuries." (*Id.* at 8.) Similarly, on or about December 11, 2018, Roberts told Plaintiff "you're never getting a cast or going to I-Block; we barely have space down there." (*Id.*)

Based on these alleged facts, Plaintiff believes that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. (*Id.* at 9.) Plaintiff also alleges that Westchester County violated his constitutional rights through a "fail[ure] to properly train and supervise its employees as to [the] proper use of force" and "a pattern of using unnecessary force against its inmates." (*Id.*) Plaintiff seeks $2,000,000 in compensatory damages, and $5,000,000–10,000,000 in punitive damages, and costs. (*Id.*)

### B. Procedural Background

Plaintiff filed his Complaint on April 4, 2019. (Dkt. No. 2.) On the same day, Plaintiff filed a request to proceed *in forma pauperis*, (Dkt. No. 1), which was granted on April 8, 2019, (Dkt. No. 4). On April 11, 2019, the Court directed service on Defendants, (Dkt. Nos. 6–7), which was accepted on May 21, 2019. (Dkt. Nos. 9–29.) On September 25, 2019, the CCS Defendants filed their Motion To Dismiss and accompanying papers. (CCS Defs.' Not. of Mot; Decl. of Paul A. Sanders, Esq. in Supp. of Mot. ("Sanders Decl.") (Dkt. No. 37); CCS Defs.' Mem. of Law in Supp. of Mot. ("CCS Mem.") (Dkt. No. 38).) On October 4, 2019, the County Defendants filed their Motion To Dismiss and accompanying papers. (Cty. Not. of Mot.; Decl. of Loren Zeitler in Supp. of Mot. ("Zeitler Decl.") (Dkt. No. 41); Cty. Defs.' Mem. of Law in Supp. of Mot. ("Cty. Mem.") (Dkt. No. 42).) Plaintiff failed to file a Response to either Motion. (*See* Dkt. Nos. 46, 48.) Accordingly, on November 20, 2019, the Court deemed the Motions fully submitted. (Dkt. No. 49.)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (quotation marks and alteration omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same).  Further, "[f]or the

purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [his complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted).  However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents

either in [the] plaintiff[']s possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

B.  Analysis

The County Defendants argue that Plaintiff did not exhaust his administrative remedies and that his claims are therefore barred by the Prison Litigation reform Act ("PLRA"); that Plaintiff has failed to plead a *Monell* claim; that Plaintiff's allegations concerning the WCJ's grievance procedures do not rise to a constitutional violation; and that all individual capacity claims against the Individual County Defendants fail because their alleged conduct does not rise to a constitutional violation and because they are entitled to qualified immunity.  (County Mem. 1–2.)  Similarly, the CCS Defendants argue that Plaintiff fails to state a deliberate indifference claim against Ulloa and Gendell because the allegations are "vague," "contradictory," and "constitute negligence at most"; because Plaintiff concedes that he received treatment and merely disagrees with medical officials' recommendations; and because Plaintiff fails to plead that the CCS Defendants were the "proximate cause" of his injuries.  (CCS Mem. 1.)  CCS Defendants further argue that Plaintiff has failed to plead a claim against CCS because CCS is not named in the body of the Complaint and because Plaintiff's allegations do not meet the criteria required to state a claim under *Monell v. Department of Soc. Servs*., 436 U.S. 658 (1978).  (*Id.*)  The Court considers these arguments only to the extent necessary to resolve the pending Motions.[3]

---

[3] Although Defendants also argue for dismissal of possible state law claims, the Court does not construe the Complaint as raising any such claims given its express allegation of conduct "all in violation of the Eighth, First and Fourteenth Amendments."  (Compl. 9.)

### 1.  PLRA

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citation omitted).  The exhaustion requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 520, 532 (2002), and includes actions for monetary damages even if monetary damages are not available as an administrative remedy, *see Booth v. Churner*, 532 U.S. 731, 741 (2001).  Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out."  *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citations, quotation marks, and alteration omitted).  Indeed, the PLRA demands "strict compliance with the grievance procedure . . . , or else dismissal must follow inexorably."  *McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (citations, quotation marks, and alteration omitted).

Crucially, however, failure to exhaust is "an affirmative defense, not a pleading requirement."  *Perkins v. Perez*, No. 17-CV-1341, 2019 WL 1244495, at *6 (S.D.N.Y. Mar. 18, 2019); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . ."); *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (same).  "Inmates are [therefore] not required to specially plead or demonstrate exhaustion in their complaints."  *Jones*, 549 U.S. at 216.  Accordingly, "dismissal is appropriate on a motion to dismiss [only] where failure to exhaust is clear on the face of the complaint."

*Brinson v. Kirby Forensic Psych. Ctr*., No. 16-CV-1625, 2018 WL 4680021, at *6 (S.D.N.Y. Sept. 28, 2018) (citation omitted); *see also McCoy*, 255 F. Supp. 2d at 249 (same).

Here, failure to exhaust is *not* clear from the face of the Complaint. On the contrary, the Complaint's only mention of possible administrative remedies comes in the context of Defendants' refusal to assist Plaintiff in preparing a grievance. (Compl. 8.) Plaintiff never states, however, that he ultimately failed to file a grievance or otherwise pursue internal administrative remedies. He merely alleges that Defendants failed to assist him. (*See id.*) In the absence of allegations establishing that Plaintiff failed to exhaust, the Court cannot simply assume that Plaintiff failed to meet the requirements of the PLRA. *See Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *3 (S.D.N.Y. Mar. 7, 2019) (declining to "flip[] the burden of proof" with respect to pleading exhaustion). Accordingly, because it is not "clear on the face of the [C]omplaint" that Plaintiff has failed to exhaust," *Brinson*, 2018 WL 4680021, at *6, the Court declines to dismiss Plaintiff's claims based on the PLRA at this stage. *See White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *8 (S.D.N.Y. Dec. 21, 2018) (holding that defendants "offer no evidence showing that [the] [p]laintiff in fact failed to exercise the grievance process with respect to" a defendant). Of course, Defendants remain free to raise the exhaustion issue in the future "on a more fully-developed record." *Simmons v. Cripps*, No. 12-CV-1061, 2013 WL 1285417, at *3 (S.D.N.Y. Mar. 28, 2013).[4]

### 2.  Denial of Assistance in Filing a Grievance

To the extent that Plaintiff pursues claims based on Defendants' refusal to assist him in filing a grievance, (Compl. 8), such allegations are insufficient to state a constitutional claim.

---

[4] Because Plaintiff's purported failure to exhaust under the PLRA is the only basis for dismissing claims against Pena and Graham related to their December 10, 2018 encounter with Plaintiff, those claims survive the instant Motions.

The First Amendment protects a right to access the courts and to petition the government for the redress of grievances.  *See Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983) (noting that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances").  However, "[t]o state a claim for denial of access to the courts, 'a plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim.'"  *Crispin v. Westchester County*, No. 18-CV-7561, 2019 WL 2419661, at *4 (S.D.N.Y. June 10, 2019) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).  Accordingly, courts have held that where prison officials "ignore a grievance that raises constitutional claims, the proper avenue to seek relief is . . . directly petitioning the government for redress of his claims."  *Id.* (quoting *Harris v. Westchester Cty. Dep't of Corr.*, No. 06-CV-2011, 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008)).  Here, Plaintiff has successfully filed the instant Action, and Plaintiff has not alleged that Defendants raised any barriers to his doing so.  Accordingly, "any claim that [P]laintiff was deprived of his right to petition the government for redress is belied by the fact of his bringing this lawsuit."  *Crispin*, 2019 WL 2419661, at *4 (citation omitted); *see also Harris*, 2008 WL 953616, at *5 (collecting cases)).

To the extent that Plaintiff seeks to advance claims under the Fourteenth Amendment, such claims fail as well.  Courts have consistently held that "[p]rison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment."  *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (citations omitted); *see also Ford v. Aramark*, No. 18-CV-2696, 2020 WL 377882, at *11 (S.D.N.Y. Jan. 23, 2020) (same) (collecting cases); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("[T]he refusal to process an inmate's grievance or

failure to see to it that grievances are properly processed does not create a claim under § 1983."
(citation omitted)).  Accordingly, Plaintiff's allegations that Defendants failed to assist him with
his grievance and stated "you can't grieve disciplinary," (Compl. 8), do not state a claim under
the Fourteenth Amendment.

### 3.  Claims Against Spano

"It is well settled that, in order to establish a defendant's individual liability in a suit
brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the
alleged constitutional deprivation."  *Grullon*, 720 F.3d at 138 (citations omitted).  To establish
personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Id.* at 139 (citations, alterations, and italics omitted).  In other words, "[b]ecause vicarious
liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official
defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*,
556 U.S. at 676.  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one
of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL
365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[ ] with
respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*); *see also
Green v. Garcia*, No. 18-CV-1745, 2020 WL 1467359, at *4–5 (S.D.N.Y. Mar. 25, 2020)
(dismissing an action because the plaintiff failed to offer any facts suggesting the defendants'
involvement in the alleged violations).

Here, Plaintiff fails to allege Spano's personal involvement in any constitutional violation.  While Plaintiff includes Spano in the caption of his Complaint, Plaintiff alleges no conduct by Spano and does not even mention Spano in the body of his Complaint.  Accordingly, there can be no inference of Defendant's personal involvement in any alleged constitutional violation.  *See Moore v. Westchester County*, No. 18-CV-7782, 2019 WL 3889859, at *5 (S.D.N.Y. Aug. 19, 2019) (explaining that "personal involvement is not established where the defendant's name appears only in the caption of the complaint" (citation omitted)); *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *3 (S.D.N.Y. July 25, 2014) (dismissing the plaintiff's § 1983 claims against certain defendants whose names appeared only in the caption of the complaint and on the list of all defendants); *Shepherd v. Fisher*, No. 08-CV-9297, 2011 WL 3278966, at *4 (S.D.N.Y. July 27, 2011) (finding no personal involvement where the complaint did not allege that the defendant "was directly responsible for the provision of religious meals . . . or played any other role in the alleged deprivation").  Plaintiff's claims against Spano are therefore dismissed.[5]

### 4.  Denial of Medical Care

Plaintiff also alleges that Defendants were deliberately indifferent to, or actively interfered with, his medical care while incarcerated at WCJ.  (*See* Compl 9.)  Because Plaintiff was a pretrial detainee at the time of the allegations, (*see id.* at 3), such claims are "analyzed under the Due Process Clause of the Fourteenth Amendment."  *Tutora v. Correct Care Sols.,*

---

[5] By contrast, Plaintiff alleges that Graham and Pena were directly involved in physically assaulting him, (*see* Compl. 6–7), that Hardy, Roberts, Delgrosso, Carden, Omess, Vollmer, Ulloa, Gendell, Munioz, and Torres "conferred and decided" to deny him a cast, (*id.* at 7), and that "Sorrentino, Price, Kitt, Beckford, Munioz, Torres, Delgrosso, Hardy, and Diaz collectively informed Plaintiff" that he could not be housed in the infirmary, (*id.* at 8).

*LLC*, No. 17-CV-9169, 2019 WL 1383646, at *4–5 (S.D.N.Y. Mar. 27, 2019); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (explaining that pretrial detainees' conditions of confinement claims are analyzed under the Fourteenth, rather than the Eighth, Amendment).[6] Although Fourteenth Amendment conditions of confinement claims are analyzed somewhat differently than the same claims under the Eighth Amendment, *see Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017), the overarching framework for both types of claims remains largely consistent.  Under both the Eighth and Fourteenth Amendments, an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendant "acted with [at least] deliberate indifference."  *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017) (citing *Darnell*, 849 F.3d at 29).  The first element "is evaluated the same way under both the Eighth Amendment and Fourteenth Amendment." *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *19 n.19 (S.D.N.Y. Mar. 30, 2018) (citing *Darnell*, 849 F.3d at 30).  This requirement is "objective," requiring that an inmate show that the "the alleged deprivation" is "sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted).  In other words, the inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm."  *Blandon v. Capra*, No. 17-CV-65, 2017 WL 5624276, at *7 (S.D.N.Y. Nov. 20, 2017) (quoting *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996)).  Analyzing the first element involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263,

---

[6] "Because as a pre-trial detainee [Plaintiff] was not being 'punished,' the 'cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply." *Cuoco*, 222 F.3d at 106.  Accordingly, any purported Eighth Amendment claims are dismissed.

279 (2d Cir. 2006), and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280 (citation omitted). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).  Nevertheless, the Second Circuit has offered the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and quotation marks omitted).

The second, "*mens rea*" element "applies differently to claims under the Eighth Amendment and the Fourteenth Amendment." *Howard v. Brown*, No. 15-CV-9930, 2018 WL 3611986, at *4 (S.D.N.Y. July 26, 2018) (citing *Darnell*, 849 F.3d at 34–35).  While the Eighth Amendment "imposes a subjective standard"—that the prison official "know[ ] of and disregard[ ] an excessive risk to inmate health or safety"—the Fourteenth Amendment, applicable here, imposes an "objective standard." *Id.* (citing *Darnell*, 849 F.3d at 32).  That is, the "official need only recklessly fail[ ] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* (citing *Darnell*, 849 F.3d at 35).  However, "[d]espite the slightly lower standard" applicable to pretrial detainees, "which is akin to objective recklessness, any § 1983 claim [f]or a violation of due process requires proof of a *mens rea* greater than mere negligence." *Miller v. County of Nassau*, No. 16-CV-5843, 2018 WL 1597401, at *3 (E.D.N.Y. Mar. 31, 2018) (ultimately quoting *Darnell*, 849 F.3d at 36).  That

is because "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015) (citation, quotation marks, and emphasis omitted).

Here, the Complaint appears to allege three distinct denials of care: (1) Defendants' objection to Plaintiff receiving a fiberglass cast, (2) Defendants' refusal to house Plaintiff in the infirmary, and (3) Ulloa's and Gendell's failure to provide proper treatment.  The Court analyzes each claim in turn.

### a.  Denial of a Fiberglass Cast

As an initial matter, Plaintiff acknowledges that he was provided with medical care immediately after the incident with Graham and Pena.  Plaintiff was promptly taken to the WCDOC Clinic, and when treatment there proved inadequate, Plaintiff was transported to Westchester Medical Center.  (*See* Compl. 7.)  Moreover, while Westchester Medical Center's personnel initially attempted to place Plaintiff in a fiberglass cast, Defendants' objection to the use of such a cast does not itself amount to a constitutional violation for several reasons.  First, Defendants did not urge the medical personnel to ignore Plaintiff's medical needs, but to provide "an alternative remedy."  (*Id.*)  Second, the objections came not only from correctional staff, but from professional medical personnel—namely, Ullo and Gendell—as well.  (*See id.*)  Third, despite Defendants' objections to a fiberglass cast, it appears that Plaintiff ultimately received some kind of cast or splint.  (*See id.* ("The Nurse objected to this restriction and substituted the cast for a splint.")).  Plaintiff thus expresses a "mere disagreement over the proper treatment" administered to him, which is insufficient to state a deliberate indifference claim provided "the treatment given is adequate."  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Burgess v. Wright*, No. 08-CV-725, 2009 WL 2971538, at *8 (N.D.N.Y. Sept. 11, 2009) ("Even

if splints and bandages were not an adequate treatment for a broken finger, such treatments would be, at their worst, medical malpractice.  This is still insufficient as negligent actions fail to state a claim for deliberate indifference." (citation omitted)); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim."); *id.* at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference.  Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." (citations omitted)).

Additionally, Plaintiff acknowledges that Defendants' objections to providing Plaintiff with a fiberglass cast appear to have been motivated by legitimate penological concerns, namely that Plaintiff should not be placed in fiberglass "due to his violent history."  (Compl. 7.)  This is crucial, because, as noted above, Plaintiff must establish that Defendants' treatment of him was "unreasonable" and "reckless."  *Darnell*, 849 F.3d at 30; *see id.* at 34 (explaining that Fourteenth Amendment claims require an inquiry regarding whether conditions are "reasonably related to a legitimate, nonpunitive governmental purpose" (citation omitted)).  Accordingly, even if Plaintiff is correct that the "cast restriction" contributed to his "excruciating pain," (Compl. 8), Plaintiff has failed to allege facts establishing that Defendants had the necessary *mens rea* for liability under § 1983.  *See Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim or a violation of due process requires proof of a *mens rea* greater than mere negligence."); *Ward v. Coley*, No. 18-CV-2382, 2019 WL 977887, at *6 (S.D.N.Y. Feb. 28, 2019) ("[P]oor medical judgment does not constitute deliberate indifference . . . ." (citation omitted)).  This is particularly true given that prison

officials must be "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Proctor v. LeClaire*, 846 F.3d 597, 610 (2d Cir. 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).  The decision to prevent a violent inmate from possessing a hard, potentially dangerous object falls within that zone of discretion.  *See Cejvanovic v. Ludwick*, 923 F.3d 503, 507 (8th Cir. 2019) (explaining that "not providing an inmate a cane that could be used as a weapon was 'prudent'" and therefore did not amount to constitutional violation (citation omitted)); *Pedigo v. Reed*, No. 16-CV-02158, 2019 WL 266309, at *3 (D. Colo. Jan. 18, 2019) (noting evidence indicating that "[b]ecause the brace contains metal and fiberglass, it could be used to make weapons"); *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *1 (S.D.N.Y. Sept. 30, 2015) (discussing an attack by one inmate on another using a hard cast); *Flemming v. Goord*, No. 06-CV-26, 2008 WL 4532506, at *6 (N.D.N.Y. Sept. 29, 2008) (concluding that a plaintiff "failed to assert any serious medical need necessitating" the use of a cane, wheelchair and walker sufficient to "outweigh the penological and institutional safety concerns and regulations which otherwise support the prohibition of inmates from having such devices which could be used as weapons"); *Fleming v. Nebraska Dep't of Corr. Servs.*, No. 03-CV-3307, 2006 WL 2990355, at *10 (D. Neb. Oct. 18, 2006) (noting that inmates are not typically permitted to possess metal braces "because they can be used to cause harm to other persons or . . . to cause disruption within the unit," and that prison staff work with the medical staff to "come up with an acceptable treatment substitute" (quotation marks omitted)).  Accordingly, as alleged, the decision to prevent Plaintiff from receiving a fiberglass cast cannot serve as the basis for a claim under the Fourteenth Amendment.

b.  Housing Outside the Infirmary

Plaintiff's allegations regarding his housing fail for similar reasons.  Plaintiff alleges only that his "hospital discharge records" called for him to "be housed in an infirmary setting with an elevated bed, *inter alia*," that Defendants refused to house him in the WCJ infirmary "because Officer Graham hit himself while engaged with Plaintiff causing himself to suffer an alleged injury" and because WCJ "barely ha[d] space down there," and that as a result, "Plaintiff could not properly shower, or clean his living quarters."  (Compl. 8.)  Such allegations fail to satisfy the objective prong a Fourteenth Amendment conditions of confinement claim, because such allegations do not suggest that "the alleged deprivation" was "sufficiently serious."  *Spavone*, 719 F.3d at 138.  Notably, Plaintiff does not allege that he suffered any pain or physical injury as a result of his housing.  *See Porter v. Bunch*, No. 16-CV-5935, 2019 WL 1428431, at *7 (S.D.N.Y. Mar. 29, 2019) ("[W]here denial or delay in dispensing of medication is at issue, courts have found such bare allegations of pain and suffering insufficient to establish serious harm in the deliberate indifference context." (citations omitted)).  On the contrary, Plaintiff alleges only that he could not "properly" shower or clean his environment.  (Compl. 8.)  The allegations therefore lack the requisite specificity to state a claim because Plaintiff does not explain what a "proper" shower or cleaning is, how his experience differed from that standard, or why these conditions posed an "unreasonable risk of serious damage to his health."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).  Moreover, courts have generally found that allegations of temporarily inadequate showers and proper cleaning do not amount to a constitutional deprivation.  *See Cheatham v. City of New York*, No. 18-CV-2388, 2020 WL 207783, at *4 (E.D.N.Y. Jan. 14, 2020) (explaining that allegations of moldy showers were inadequate to state a Fourteenth Amendment claim); *Santana v. City of New York*, No. 15-CV-

19

6715, 2018 WL 1633563, at *7 (S.D.N.Y. Mar. 29, 2018) ("Denial of shower access for up to

two weeks has been held not to be a violation of the Eighth Amendment." (citation omitted));

*Banks v. Argo*, No. 11-CV-4222, 2012 WL 4471585, at *4, at *10 (S.D.N.Y. Sept. 25, 2012)

("[E]ven assuming prison officials denied Plaintiff shower access for the entire time alleged in

his complaint—thirteen days—his claim still fails as a matter of law."); *see also McCoy*, 255 F.

Supp. 2d at 260 ("[A] two-week suspension of shower privileges does not suffice as a denial of

'basic hygienic needs.'" (quoting *Cruz v. Jackson*, No. 94-CV-2600, 1997 WL 45348, at *7

(S.D.N.Y. Feb. 5, 1997)).  Accordingly, because Plaintiff fails to plausibly allege that his

housing posed "a substantial risk of serious harm," Plaintiff cannot sustain a Fourteenth

Amendment claim on that basis. *Blandon*, 2017 WL 5624276, at *7

### c.  Claims for Inadequate Treatment by Ulloa and Gendell

With respect to inadequate treatment by Gendell and Ulloa, Plaintiff alleges only that

they "turned a blind eye and failed to act," neglecting to provide Plaintiff with "aftercare" and "a

cast," (Compl. 8), and that they failed to "prescrib[e] or offer[] proper pain relief for [his] broken

arm," (*id.* at 9).  To the extent Plaintiff's claims are based on the alleged denial of a fiberglass

cast, the claim fails for the reasons discussed above.  To the extent Plaintiff's claims are based on

the alleged denial of unspecified "aftercare," and the lack of "proper pain relief," his claims fail

because they are "[v]ague and conclusory." *Jackson v. Westchester County*, No. 18-CV-7207,

2019 WL 3338020, at *6 (S.D.N.Y. July 25, 2019) (citation and quotation marks omitted).

Indeed, Plaintiff does not explain what this requisite "aftercare" should have been or why he

believes he needed it, and he does not explain what would have constituted "proper" pain relief

or why he believes he needed it.  *See Smalls v. Wright*, No. 16-CV-2089, 2017 WL 3474070, at

*3 (D. Conn. Aug. 11, 2017) (explaining that a plaintiff's contention that a defendant doctor

"knowingly persisted in a course of treatment that was ineffective and left [plaintiff] in extreme pain" was "conclusory and devoid of factual support"); *Henrius v. County of Nassau*, No. 13-CV-1192, 2015 WL 5542464, at *1 (E.D.N.Y. Sept. 16, 2015) (explaining that conclusory allegations of denial of medical care are "not entitled to the assumption of truth" on a motion to dismiss (citations omitted)).  Moreover, absent more, Plaintiff's bare allegation that Gendell and Ulloa denied him pain medications that he believed were "proper" does not suffice to suggest that they acted with the requisite, "deliberately indifferent" intent.  *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (explaining that allegations that the plaintiff was denied medical care, including pain medication, "leaving him needlessly to suffer" fell "far short of alleging a deliberate indifference on the part of [the defendant medical practitioners]").  As courts have repeatedly held, "mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703; *see also Henrius*, 2015 WL 5542464, at *16 (same). Therefore, this claim is dismissed.

### 5.  *Monell* Claims

"It is well established that a *Monell* claim cannot lie in the absence of an underlying constitutional violation."  *DeRaffele v. City of New Rochelle*, 2017 WL 2560008, at *6 (S.D.N.Y. 2017); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action . . . ; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." (emphasis in original); *Thomas v. Westchester County*, 2013 WL 3357171, at *6 (S.D.N.Y. July 3, 2013) (same).  Accordingly, to the extent Plaintiff pursues claims against Westchester County or CCS for failure to assist with grievances or the

denial of medical care, such claims cannot be sustained in light of the Court's dismissal of all such underlying claims.

To the extent that Plaintiff pursues a *Monell* claim against Westchester County based on the altercation involving Plaintiff, Graham and Pena, such a claim fails because Plaintiff does not allege that Westchester County was itself involved in a constitutional tort.  It is well-established that "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).  The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted).  Accordingly, a plaintiff seeking to hold a municipality liable under § 1983 must allege one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).

Here, Plaintiff has failed to allege *any* of these bases for *Monell* liability.  In particular, Plaintiff does not allege that Graham and Pena acted pursuant to a municipal policy or custom, that Graham or Pena were policymakers, or that Westchester County failed to provide proper supervision or training.  Indeed, insofar as Plaintiff mentions municipal policy, he acknowledges that Graham and Pena acted "in violation of WCDOC policy."  (Compl. 7.)  This is the "antithesis of a *Monell* claim."  *Thomas v. DuBois*, No. 19-CV-7533, 2020 WL 2092426, at *4 (S.D.N.Y. Apr. 30, 2020) (citation and quotation marks omitted); *see also Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *7 (S.D.N.Y. June 23, 2010) (explaining that an alleged failure to follow a policy "is the antithesis of a link between policy and action").  Accordingly, all claims against Westchester County and CCS are dismissed.  *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation).

### III.  Conclusion

For the foregoing reasons, the CCS Motion is granted in full, and the County Motion is granted with respect to all Defendants except for Graham and Pena.

Because this is the first adjudication of Plaintiff's claims, the dismissals are without prejudice.  Plaintiff may file an amended complaint with the Court within 30 days of the date of this Opinion & Order.  Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion & Order that Plaintiff wishes the Court to

consider.  Plaintiff is further advised that the amended complaint will completely replace, not supplement, the instant Complaint.  The amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.  If Plaintiff fails to timely file an amended complaint, the claims that have been dismissed without prejudice may be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending Motions, (Dkt. Nos. 36, 40), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:      July 2, 2020
            White Plains, New York

                                    _____
                                    KENNETH M. KARAS
                                    UNITED STATES DISTRICT JUDGE

24